I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY FIRST CLASS MAIL, POSTAGE PREPAID, TO (SEE BELOW) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF RECORD IN THIS ACTION ON THIS DATE

TO:     DATE:     DEPUTY CLERK:

Plaintiff w/form on 6-29-15 by TS

FILED
CLERK, U.S. DISTRICT COURT
June 29, 2015
CENTRAL DISTRICT OF CALIFORNIA
BY:    TS    DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| TALMADGE ADIB TALIB,<br><br>      Plaintiff,<br><br>      v.<br><br>JUAN GUERRERO et al.,<br><br>      Defendants. | Case No. CV 15-3825-JAK (DFM)<br><br>MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| DANIEL A. DAVIS,<br><br>      Plaintiff,<br><br>      v.<br><br>JUAN GUERRERO et al.,<br><br>      Defendants. | Case No. CV 15-3829-JAK (DFM)<br><br>MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| ROLAND LEROY REESE-BEY,<br><br>      Plaintiff,<br><br>      v.<br><br>JUAN GUERRERO et al.,<br><br>      Defendants. | Case No. CV 15-3833-JAK (DFM)<br><br>MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

# I.

# INTRODUCTION

These three separate lawsuits arise out of the same incident. Plaintiffs Talmadge Adib Talib ("Talib"), Daniel A. Davis ("Davis"), and Roland Leroy Reese-Bey ("Reese-Bey") (collectively, "Plaintiffs") have each filed a pro se civil rights complaint against law enforcement personnel employed by the Los Angeles County Sheriff's Department ("LASD"). Case No. CV 15-3825, Dkt. 1 ("Talib Complaint"); Case No. CV 15-3829, Dkt. 1 ("Davis Complaint"); Case No. CV 15-3833, Dkt. 1 ("Reese-Bey Complaint").[1] Although the complaints are not entirely identical, they each name the same individual Defendants: (1) Juan Guerrero, (2) Stephen Park, (3) "John Doe" Swanson, (4) "John Doe" Anderson, (5) "John Doe" Romero, (6) "John Doe" Hooper, (7) "Jane Doe" Marchello, (8) "John Doe" Orbe; (9) Alex Gillinets, (10) James North, and (11) Rich Kiguelman. Talib Complaint at 4-12; Davis Complaint at 4-12; Reese-Bey Complaint at 4-12. All of the individual Defendants are named in both their individual and official capacities. Id. Plaintiffs also name the LASD and the County of Los Angeles. Talib Complaint at 12-13; Davis Complaint at 12-13; Reese-Bey Complaint at 12-13.

In accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court must screen the complaints before ordering service for purposes of determining

---

[1] At the time it was filed, the Talib Complaint was assigned the undersigned U.S. Magistrate Judge and U.S. District Judge John A. Kronstadt because those judicial officers are also assigned to Talib v. Peter Nicholas et al., Case No. CV 14-5871-JAK (DFMx), another civil rights case being litigated by Talib against several other Los Angeles County Sheriff's Department deputies. The Davis and Reese-Bey Complaints were originally assigned to other judicial officers; however, the Court transferred those cases to the undersigned and Judge Kronstadt because they arise out of the same transaction, happening, or event.

whether the action is frivolous or malicious; or fails to state a claim on which relief might be granted; or seeks monetary relief against a defendant who is immune from such relief.

## II.
## SUMMARY OF PLAINTIFFS' ALLEGATIONS

The three complaints allege a substantially similar version of events.

On the evening of July 10, 2013, Plaintiffs and Reese-Bey's wife Romaine Holms-Bey ("Holms-Bey") left a meeting in Inglewood. Talib Complaint at 13; Davis Complaint at 13; Reese-Bey Complaint at 13. Reese and Holms-Bey agreed to give Davis and Talib a ride home from the meeting. Id. The four left in Reese-Bey's personal vehicle, which is never completely described but appears to be a pick-up truck with a camper shell in the bed area. See Talib Complaint at 16; Davis Complaint at 18, 19; Reese-Bey Complaint at 19. Reese-Bey, Holms-Bey, and Davis were in the passenger compartment of the truck with Reese-Bey driving. See Talib Complaint at 15; Reese-Bey Complaint at 15. Talib rode in the truck bed. See Talib Complaint at 16.

At approximately 11:05 p.m., Reese-Bey stopped his truck near the intersection at 107th Street and Normandie Avenues after being pulled over by a marked LASD patrol car. Talib Complaint at 15; Davis Complaint at 15; Reese-Bey Complaint at 15. From the outset, Davis made a recording of the incident using his phone. Davis Complaint at 15. Park approached the driver's window and ordered Reese-Bey to turn off the engine. Reese-Bey Complaint at 15. Reese-Bey asked what authority Park had to pull them over. Id. at 15-16. Park cited United States v. Miles as a basis for the traffic stop. Davis Complaint at 16; Reese-Bey Complaint at 16.

Meanwhile, Guerrero approached the truck's back window and Talib. Talib Complaint at 16. Guerrero drew his gun and pointed it in Talib's face and began yelling at Talib. Id. Stunned by the fact that Guerrero was pointing

a gun in his face, Talib froze and initially did not respond to Guerrero's questions. Id. After Guerrero repeatedly asked Talib "do you understand English?", Talib responded by saying, "[y]ou have that gun in my face, you are threaten[ing] my life!" Talib Complaint at 16. Reese-Bey expressed concern to Park about what was going on in the back of the truck. Davis Complaint at 16; Reese-Bey Complaint at 16.

Park then ordered Reese-Bey, Holms-Bey, and Davis to put their hands on the dashboard for his safety. Davis Complaint at 16; Reese-Bey Complaint at 16. Park then asked a series of questions which Reese-Bey, Holms-Bey, and Davis apparently refused to answer. Davis Complaint at 16; Reese-Bey Complaint at 16. Guerrero ordered Talib to show his left hand, a command that Talib appeared to refuse, telling Guerrero that he would not move because Guerrero was threatening his life. Talib Complaint at 16; see also Davis Complaint at 16; Reese-Bey Complaint at 16. Guerrero ordered Talib to exit the vehicle. Talib Complaint at 16. Talib refused, telling Guerrero that he lacked authority and was violating his rights. Id. Guerrero repeated his order, and Talib asked what law compelled him to follow Guerrero's orders. Id. Guerrero told Talib, "United States v. Miles." Id. Talib disputed whether case law was adequate authority. Id.

Meanwhile, Park continued interrogating the Reese-Bey, Holms-Bey, and Davis at which time a second patrol car carrying two additional officers came to a screeching stop nearby. Davis Complaint at 16; Reese-Bey Complaint at 16. One of those officers drew his gun and began pulling Talib from the vehicle. Talib Complaint at 17. Talib reiterated his demand for authority for the officers' actions. Id. The officers told Talib he was being uncooperative and Talib disagreed, maintaining that he had not committed a crime. Id.

Park then ordered Reese-Bey to exit the vehicle. Reese-Bey Complaint at

17. Reese-Bey asked Park if he was going to handcuff him. Id. Park said he was not but when Reese-Bey got out of the car Park handcuffed him. Id. Reese-Bey told Park that he did not consent to any physical contact. Id. Park ignored Reese-Bey's comments and proceeded to search him. Id. Park then put Reese-Bey into a patrol car. Id.

    A third patrol car arrived and two more officers went to the back of the truck. Talib Complaint at 17. North had a camera and began recording the incident. Id. The officers continued to try to get Talib out of the vehicle as he continued to argue. Id. at 18. Orbe ordered Talib to show his hands and pointed a gun at Talib. Id.

    Park returned to the passenger compartment and ordered Holms-Bey to get out of the vehicle. Davis Complaint at 17. Holms-Bey refused. Id. Park explained that she could be ordered to get out of the vehicle during a traffic stop for officer safety. Id. Holms-Bey disputed whether there was "probable cause" for the traffic stop and Park explained that "I pulled you over because you have someone in the back of the truck." Id. Holms-Bey contended that they were not endangering anyone. Id. Park explained that having someone in the truck bed was illegal and dangerous. Id. Park explained that having someone riding in the truck bed was a Vehicle Code violation. Id. at 18. Holms-Bey argued that there was no one injured and continued to refuse to get out of the vehicle. Id. Park reiterated the basis for the traffic stop. Id.

    Davis and Holms-Bey then told Park that if he touched them it would be an assault. Id. at 18-19. Davis then argued with Park about the basis for the traffic stop. Id. at 19. Guerrero then told Park that "the Sergeant" wanted to speak with him. Id. at 19. Park left and Guerrero cautioned Holms-Bey not to make any sudden movements. Id. at 19-20.

    The officers then asked Holms-Bey to come to the back of the vehicle to speak with Talib, warning her that "you'd better come back here and . . . get

1  him to cooperate or we're going to spray him with mace." Id. at 20. Holms-
2  Bey asked Talib why he was refusing to get out of the car. Talib Complaint at
3  19. Talib explained that the officers had pointed their guns at him and
4  assaulted him. Id. at 19.
5        Park and Guerreo then sprayed mace on Talib and forcefully removed
6  him from the vehicle. Talib Complaint at 19; Davis Complaint at 20; Reese-
7  Bey Complaint at 18. The fumes from the mace reached the front of the truck
8  and began choking Davis. Davis Complaint at 20. Talib was handcuffed and
9  placed in a patrol car. Talib Complaint at 19; Reese-Bey Complaint at 18.
10       A few minutes later, Marchello arrested Holms-Bey and forcefully
11 placed her into Marchello's patrol car with Park's assistance. Reese-Bey
12 Complaint at 18.
13       Gillinets attempted to interview Davis while Davis was still inside the
14 truck about what happened. Davis Complaint at 21. Davis said he could not
15 give a statement. Id. Romero then demanded that Davis get out of the vehicle.
16 Id. at 22. After initially refusing, Davis got out of the truck. Id. Romero
17 immiedately handcuffed Davis and forcefully put him in the back seat of the
18 ~~same patrol car as Reese-Bey. Id.~~
19       Talib, Reese-Bey, and Davis were all taken to the South Los Angeles
20 Sheriff's Department Station. Talib Complaint at 20; Davis Complaint at 23;
21 Reese-Bey Complaint at 19. All three were patted down again. Talib
22 Complaint at 20; Davis Complaint at 23; Reese-Bey Complaint at 19. Talib
23 and Reese-Bey were fingerprinted. Talib Complaint at 20; Reese-Bey
24 Complaint at 19. All three remained in custody until the next morning, when
25 they were all released. Talib Complaint at 20; Davis Complaint at 23; Reese-
26 Bey Complaint at 19. Talib and Reese-Bey were given a citation. Talib
27 Complaint at 20; Reese-Bey Complaint at 19.
28 ///

## III.
## PLAINTIFF'S CLAIMS

The three complaints sets forth 21 identical claims for relief against all of the individual Defendants as follows:

(1) assault with a deadly weapon, California Penal Code § 245(a)(1)(2);

(2) violation of Plaintiff's First Amendment right to free speech;

(3) assault with a dangerous weapon causing serious bodily harm, 18 U.S.C. §§ 113(a)(3), (4), and (6);

(4) battery and willful and unlawful use of force, California Penal Code § 242;

(5) unreasonable search of person in violation of the Fourth Amendment;

(6) unreasonable search of property in violation of the Fourth Amendment;

(7) unreasonable seizure of person in violation of the Fourth Amendment;

(8) unreasonable seizure of effects in violation of the Fourth Amendment;

(9) denial of liberty without due process of law in violation of the Fourteenth Amendment;

(10) denial of equal protection of the laws in violation of the Fourteenth Amendment;

(11) deprivation of Plaintiff's rights under color of law, 18 U.S.C. § 242;

(12) conspiracy to injure, oppress, threaten or intimidate Plaintiff, 18 U.S.C. § 241;

(13) maiming with intent to torture and/or inflict severe pain or suffering, 18 U.S.C. § 114;

(14) assault by striking, resulting in serious bodily injury, 18 U.S.C. §§

1 | 113(a)(4) and (6);
2 |     (15) false imprisonment, California Penal Code § 236;
3 |     (16) extortion and obtaining official act by wrongful use of force, California Penal Code §§ 518, 519, and 520;
4 |     (17) human trafficking, California Penal Code 236.1(a), (b), (g), and (h)(1);
5 |     (18) abuse of legal process and involuntary servitude, 22 U.S.C. §§ 7102(1), (3), and (9)(B);
6 |     (19) neglect to prevent abuse of legal process, 42 U.S.C. § 1986;
7 |     (20) conspiracy to obstruct justice and intimidate party and witnesses, 42 U.S.C. § 1985(2); and
8 |     (21) conspiracy in furtherance of the deprivation of Plaintiff's rights, 42 U.S.C. § 1985(3). Talib Complaint at 14-15; Davis Complaint at 14-15; Reese-Bey Complaint at 14-15.

None of Plaintiff's claims are alleged against the LASD or the County of Los Angeles. Instead, Plaintiff alleges that the LASD and the County of Los Angeles are "vicariously liable" for the conduct of its employees under California Government Code § 815(a). Talib Complaint at 13; Davis Complaint at 13; Reese-Bey Complaint at 13.

## IV.
## STANDARD OF REVIEW

The Court's screening of the complaints is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the complaint states a claim on which relief may be granted, its allegations must be taken as true and construed in the light most favorable to Plaintiff. See Love v. United

States, 915 F.2d 1242, 1245 (9th Cir. 1989). Further, since Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and must afford Plaintiff the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).

However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). Moreover, with respect to Plaintiff's pleading burden, the Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted, alteration in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)).

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also

9

1 Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro
2 se litigant must be given leave to amend his or her complaint, and some notice
3 of its deficiencies, unless it is absolutely clear that the deficiencies of the
4 complaint could not be cured by amendment") (citing Noll v. Carlson, 809
5 F.2d 1446, 1448 (9th Cir. 1987)). However, if, after careful consideration, it is
6 clear that a complaint cannot be cured by amendment, the Court may dismiss
7 without leave to amend. Cato, 70 F.3d at 1105-06; see, e.g., Chaset v.
8 Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is
9 no need to prolong the litigation by permitting further amendment" where the
10 "basic flaw" in the pleading cannot be cured by amendment); Lipton v.
11 Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) (holding that
12 "[b]ecause any amendment would be futile, there was no need to prolong the
13 litigation by permitting further amendment").

## V.

## DISCUSSION

### A. Plaintiff's Allegations Are Insufficient to State a Claim Against Defendants in Their Official Capacities

Plaintiff names each of the Defendants in his or her official capacity. The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Brandon v. Holt, 469 U.S. 464, 471-72 (1985); Larez v. City of L.A., 946 F.2d 630, 646 (9th Cir. 1991). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Graham, 473 U.S. at 166. This Court will accordingly analyze whether Plaintiff has stated a claim against the LASD.

Local government entities such as the LASD "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is only when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Thus, the LASD may not be held liable for the alleged actions of the individual defendants whose alleged conduct gave rise to Plaintiff's claims unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," or if the alleged constitutional deprivation was "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91.

Plaintiff has failed to allege any policy, practice, or custom of the LASD of committing the type of constitutional violations alleged here. Accordingly, the Complaint fails to state a claim against Defendants in their official capacities, as well as any claim against the LASD or the County of Los Angeles. Therefore, all of these claims are subject to dismissal.

**B.     Plaintiff Cannot Allege Violations of Federal and State Criminal Statutes Against Defendants in a Section 1983 Action**

Plaintiff alleges various violations of the United States Code and the California Penal Code against Defendants. Generally, criminal statutes do not create private rights of action, and violations of criminal statutes cannot serve as a basis for civil liability. See Ellis v. City of San Diego, Cal., 176 F.3d 1183, 1189 (9th Cir. 1999) (affirming dismissal of 16 causes of action predicated on violations of the California Penal Code "[b]ecause these code sections do not create enforceable individual rights"); see also Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (holding that 18 U.S.C. §§ 241 and 242 are criminal provisions that provide no basis for civil liability). For a section of the federal criminal code or the California penal code to provide a private right of action,

11

1 there must be "at least [some] statutory basis for inferring that a civil cause of
2 action of some sort lay in favor of someone." Chrysler Corp. v. Brown, 441
3 U.S. 281, 316 (1979); see also Clinkscales v. Carver, 22 Cal.2d 72, 75 (1943)
4 ("A statute that provides for a criminal proceeding only does not create a civil
5 liability; if there is no provision for a remedy by civil action to persons injured
6 by a breach of the statute it is because the Legislature did not contemplate
7 one.").
8     The Court has reviewed the federal and state criminal codes cited by
9 Plaintiff and finds no indication that civil enforcement of any kind is available
10 to him. Therefore, all of the claims alleging violations of federal and state
11 criminal statutes are subject to dismissal.
12 C.    **Plaintiffs' Section 1985(3) Claims Are Subject to Dismissal**
13     42 U.S.C. § 1985(3) prohibits conspiracies to interfere with civil rights.
14 Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1990). To state a
15 claim under § 1985(3) a complaint must allege the following: (1) a conspiracy,
16 (2) to deprive any person or a class of persons of the equal protection of the
17 laws, or of equal privileges and immunities under the laws, (3) an act by one of
18 the conspirators in furtherance of the conspiracy, and (4) a personal injury,
19 property damage or a deprivation of any right or privilege of a citizen of the
20 United States. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992)
21 (citing United Bhd. of Carpenters and Joiners of Am. v. Scott, 463 U.S. 825,
22 828-29 (1983)). Further, the second of these four elements requires that, in
23 addition to identifying a legally protected right, a plaintiff must demonstrate
24 that the deprivation was motivated by "some racial, or perhaps otherwise class-
25 based, invidiously discriminatory animus behind the conspirators' action." Id.
26 (citing Griffith v. Breckenridge, 403 U.S. 88, 102 (1971).
27     Plaintiffs attempt to state a conspiracy claim under § 1985(3). However,
28 they fails to allege that Defendants' conduct was motivated by some racial or

1 | otherwise class-based, invidiously discriminatory animus. Plaintiffs make no
2 | allegation of any such discriminatory animus. Thus, Plaintiffs' § 1985(3) claim
3 | should be dismissed without prejudice.

4 | D. **Plaintiff's Equal Protection Claims Are Subject to Dismissal**

5 |     In order to state a claim against a defendant for discrimination in
6 | violation of the Equal Protection Clause of the Fourteenth Amendment,
7 | plaintiff must allege that the defendant treated him differently than other
8 | detainees with an intent or purpose to discriminate against him based on his
9 | membership in a protected class. See Washington v. Davis, 426 U.S. 229, 239-
10 | 42 (1976); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Freeman
11 | v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997) (to state an equal protection
12 | claim, "a plaintiff in a section 1983 claim must show that officials intentionally
13 | acted in a discriminatory manner").

14 |     To the extent Plaintiffs purport to state a claim under the Equal
15 | Protection Clause, Plaintiffs do not set forth any factual allegations that any
16 | Defendant treated Plaintiffs differently than any other motorist or passenger
17 | because of Plaintiffs' membership in any protected class.

## VI.
## CONCLUSION

20 |     For the reasons discussed above, the complaints are subject to dismissal.
21 | Because it is not absolutely clear that Plaintiffs' pleading deficiencies cannot be
22 | cured by amendment, such dismissal will be with leave to amend. Accordingly,
23 | if Plaintiffs still desire to pursue their claims, each shall file a First Amended
24 | Complaint within thirty-five (35) days of the date of this Order remedying the
25 | deficiencies discussed above. Each Amended Complaint should bear the
26 | docket number assigned in the applicable case; be labeled "First Amended
27 | Complaint"; and be complete in and of itself without reference to the prior
28 | complaints or any other pleading, attachment or document.

Plaintiffs are admonished that, if any or all of them fails to timely file a First Amended Complaint, the Court will recommend that this action be dismissed with prejudice for failure to diligently prosecute.

Dated: June 29, 2015

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge